**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Edward E. ALLEN, Defendant–Appellant.**

**No. 98–30002.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 10, 1998.

Decided Aug. 31, 1998.

As Amended Sept. 22, 1998.

Thomas K. Coan, Portland, Oregon, for defendant-appellant.

Sean B. Hoar, Assistant United States Attorney, Eugene, Oregon, for plaintiff-appellee.

Before: ALARCON, FERGUSON, and BRUNETTI, Circuit Judges.

ALARCON, Circuit Judge:

Edward E. Allen ("Allen") appeals from the judgment of conviction and the court's sentencing decision. He contends that the court erred in (1) failing to appoint separate counsel for his motion for a new trial, (2) denying his motion for a new trial, and (3) sentencing him in violation of the United States Constitution, relevant federal statutes, and the Sentencing Guidelines. We affirm because we conclude that none of the alleged errors compels reversal.

## I

In 1976, Allen was convicted in Jackson County, Oregon, on charges of theft, burglary, and perjury. For these convictions, Allen was sentenced to a total of four years imprisonment.

In October 1987, Allen pled guilty to federal charges of filing false tax returns in violation of 18 U.S.C. § 287 ("87–60039"), and making false statements on loan applications in violation of 18 U.S.C. 1014 ("87–60027"). Allen's sentence was suspended and he was placed on five years' probation in each case.

In 1991, Allen was convicted in Josephine County, Oregon, on a number of state misdemeanor and felony offenses. Allen was sentenced to a total of 36 months imprisonment in the Oregon State Penitentiary ("OSP") for the Josephine County convictions. An order to show cause why Allen's federal probation should not be revoked was lodged as a detainer with the OSP. Allen was released into federal custody on February 24, 1994.

On January 31, 1994, prior to his release from state custody, Allen was convicted in the District Court of Oregon on 35 counts of making false statements to financial institutions in violation of 18 U.S.C. § 1014. On October 11, 1994, Allen was sentenced to a total of 46 months imprisonment on these convictions. The district court also revoked Allen's probation imposed for the two federal offenses to which Allen pled guilty in 1987. Allen was sentenced to a total of 60 months imprisonment for the 1987 federal offenses, to be served consecutively to the concurrent sentences totaling 46 months imposed in the instant case.

Allen appealed from the 1994 judgment of conviction and the sentences. On July 3, 1996, we vacated Allen's conviction on two counts involving the Southern Oregon Federal Credit Union ("SOFCU"), and affirmed the convictions on the remaining counts. *See United States v. Allen,* 88 F.3d 765, 772 (9th Cir.1996). We vacated Allen's sentence and remanded to the district court for resentencing on the remaining counts. *Id.* Additionally, we directed the district court to hold an evidentiary hearing on Allen's Sixth Amendment claims regarding certain prior state convictions used in calculating Allen's criminal history category. *Id.*

Allen was resentenced on October 14, 1997. The district court held a hearing on Allen's Sixth Amendment claims and found that there was insufficient documentation of waiver of counsel in two of the challenged prior state convictions. Allen was sentenced to a total of 41 months imprisonment and one year supervised release with seven special conditions. The sentence was imposed *nunc pro tunc.* The district court also denied Allen's motion for a new trial based on newly discovered evidence of ineffective assistance of counsel at the trial level.

## II

■■■ Allen contends that because he did not knowingly and intelligently waive his right to counsel, his 1976 Jackson County and 1991 Josephine County convictions were obtained in violation of the Sixth Amendment of the Constitution. Allen argues that it was improper for the district court to consider these convictions in calculating Allen's criminal history score pursuant to U.S.S.G. § 4A1.1. We conclude that Allen knowingly and intelligently waived counsel in both matters. We review *de novo* a district court's determination that a particular prior conviction may be used in calculating a defendant's criminal history score. *See United States v. Young,* 988 F.2d 1002, 1003 (9th Cir.1993).[1]

At the resentencing hearing before the district court in this matter, Allen testified that his attorney died approximately one month before the trial of the 1976 Jackson County matter, and at that time, Allen "attempted to retain another attorney, and [he] couldn't—didn't have the finances to obtain one." According to Allen, "the judge [in the 1976 Jackson County case] said ... that he wasn't going to give me an attorney.... I represented myself, but the only reason is because they wouldn't give me an attorney. I never signed a waiver." The Government offered evidence in support of the presentence report's ("PSR") conclusion that Allen did waive his right to counsel in the 1976

---

1. "Under *Custis [v. United States,* 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994)], there is no constitutional right to collaterally attack the validity of a state conviction in a federal sentencing hearing on any basis other than denial of the right to counsel." *Clawson v. United States,* 52 F.3d 806, 807 (9th Cir.1995)(summarizing the Supreme Court's holding in *Custis ).* Here, Allen is contending that the prior convictions relied upon by the district court in calculating his criminal history score were obtained in violation of his Sixth Amendment right to counsel. Conse-

Jackson County case. This evidence consisted of four motions signed by Allen. Three of the motions merely indicated that Allen acted as his own attorney at the trial. In the fourth motion, filed several months prior to trial, Allen sought permission for "the defendant to be represented at (his) trial by a layman who is not a member of the State Bar...." In the affidavit attached to the motion, Allen stated:

> I have terminated the services of my attorney because in my opinion, (his) fees are unreasonable and that it has been my experience in the court in other instances where I feel my licensed attorney did not adequately defend me and I suffered the consequences. I do not trust licensed members of the State Bar Association.... I fully realize that I will be the one who will suffer the consequences of (this) coming trial....

■ "Convictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." U.S.S.G. § 4A1.2, Application Note 6 (1988).[2] Our decision in *United States v. Newman*, 912 F.2d 1119 (9th Cir.1990), requires that in the "context of considering a constitutional challenge to a prior conviction in the criminal history calculation ... the ultimate burden of proof in demonstrating the constitutional infirmity of the ... conviction lies with the defendant." *Id.* at 1121. A defendant must prove the invalidity of a prior conviction by a preponderance of the evidence. *Id.* at 1122. To do so, the defendant must present evidence sufficient to overcome the presumption that there was a valid waiver of counsel. *See United States v. Mulloy*, 3 F.3d 1337, 1339–40 (9th Cir.1993)(concluding that the Supreme Court's decision in *Parke v. Raley*, 506 U.S. 20, 113 S.Ct. 517, 121

L.Ed.2d 391 (1992), created a "presumption of regularity" of prior convictions offered for purposes of sentence enhancement, thereby preventing a defendant from proving the constitutional invalidity of a prior conviction merely by pointing to a missing or silent trial transcript). To overcome the presumption and "bar the use of [a prior] conviction for sentence enhancement," the defendant must make "[a]n affirmative showing ... that the prior conviction is invalid...." *Id.* at 1340. Allen's testimony at the 1997 resentencing hearing was insufficient to overcome the presumption of regularity. *See Cuppett v. Duckworth*, 8 F.3d 1132, 1139 (7th Cir. 1993)(en banc)("[S]elf-serving statements by a defendant that his conviction was constitutionally infirm are insufficient to overcome the presumption of regularity accorded state convictions."). The district court did not err in including the 1976 Jackson County conviction in its calculation of Allen's criminal history score.

■ The district court found that Allen "requested and was granted the right to represent himself" in the 1991 Josephine County matters. Allen contends that "there was no valid waiver" because the Josephine County trial court "forced [Allen] to choose between representing himself and being represented by incompetent counsel." This contention is without merit.

■ "The decision to waive the right to counsel is valid only if it is ... unequivocal, and knowing and intelligent." *United States v. Keen*, 104 F.3d 1111, 1114 (9th Cir.1996)(internal quotation marks omitted). In *United States v. Balough*, 820 F.2d 1485 (9th Cir.1987), this court explained that "a criminal defendant must be aware of the nature of the charges against him, the possible penalties, and the dangers and disadvan-

quently, Allen's claims fall within the exception to the rule announced in *Custis*, and we will consider them on appeal.

2. On March 5, 1997, the probation officer filed a presentence report with the district court for the resentencing proceedings mandated by this court in *United States v. Allen*, 88 F.3d 765, 772 (9th Cir. 1996). The presentence report stated that "[t]he 1993 edition of the *Guideline Manual* has been used in this case."

On May 28, 1997, Allen filed a motion in which he argued "[o]n remand, this court must resentence the Defendant under the 1988 USSG." In a June 12, 1997 addendum to the March 5, 1997 presentence report, the probation officer concluded that Allen should not be sentenced under

the 1993 edition of the Guidelines Manual because "I have concluded that the holding in [*United States v. Bishop*, 1 F.3d 910 (9th Cir. 1993)] requires application of the 1988 Guidelines for computation of Allen's Criminal History Category." In a second report also dated June 12, 1997, entitled "Revised Updated Sentencing Information For Resentencing Scheduled for June 30, 1997" ("RUPSR"), the probation officer stated that "[t]he 1988 edition of the *Guideline Manual* has been used in this case."

At the October 14, 1997 resentencing hearing, Allen's counsel conceded that the court had used the 1988 Sentencing Guidelines in its oral pronouncement of the sentence. Accordingly, the court dismissed Allen's May 28, 1997 motion to apply the 1988 Sentencing Guidelines as moot.

tages of self-representation, before his decision to waive counsel will be knowing and intelligent." *Id.* at 1487. "The preferred procedure by which a court informs a defendant of the three elements of self-representation is through a discussion in open court." *Keen,* 104 F.3d at 1114.

At the resentencing hearing, the Government offered eight exhibits in support of the PSR's conclusion that Allen waived counsel and represented himself in the 1991 Josephine County cases. Two of the exhibits are waiver of counsel forms signed by Allen. Additionally, the Government provided excerpts from the transcript of the 1991 Josephine County cases. It is evident from the excerpts that Allen was informed of the three elements of self-representation as required by *Balough. See* 820 F.2d at 1487. The Josephine County court held a thorough discussion with Allen in open court regarding Allen's motion to dismiss Christopher Mecca, his court-appointed attorney, and to represent himself. Allen told the court that he was unhappy with Mecca and "either I will hire an attorney or I will go it myself." The court informed Allen of the charges against him, the possible penalties, and the disadvantages of self-representation. Additionally, the court established that Allen's decision to represent himself was unequivocal. *See United States v. Robinson,* 913 F.2d 712, 714 (9th Cir.1990)(finding a waiver of counsel unequivocal where (1) the defendant gave the issue "serious thought," (2) the defendant decided to proceed pro se "after a lengthy discourse by the district court on the disadvantages of self-representation," and (3) the defendant's statements never conveyed "the impression that his decision constituted a mere whim or caprice"). The Josephine County court stated: "I guess I want to make sure that you understand the significance and the importance of your decision to risk being unrepresented...." Allen responded: "I thought this out for two weeks, ten, 12 hours a day. So I mean it's not something that I thought up this morning. So I made this decision and I feel it's in my best interest to terminate our client-attorney

relationship at this time, your Honor." We conclude that the evidence presented by the Government to the district court at the resentencing hearing conclusively demonstrates that Allen's waiver of counsel was valid. *See Balough,* 820 F.2d 1485, 1487 (9th Cir.1987). *See also United States v. Robinson,* 913 F.2d 712, 714 (9th Cir.1990).

Allen's claim that he was "forced to choose between representing himself and being represented by incompetent counsel" does not compel a conclusion that his waiver was equivocal and therefore invalid. *See Adams v. Carroll,* 875 F.2d 1441, 1444 (9th Cir.1989)(holding that a "request to proceed without counsel [is] unequivocal where the defendant consistently wishes to invoke the right only as an alternative to the appointment of a particular defense attorney"). *See also Robinson,* 913 F.2d at 714; *United States v. Rylander,* 714 F.2d 996, 1005 (9th Cir.1983). The district court did not err in including the 1991 Josephine County convictions in calculating Allen's criminal history.

### III

■ Allen argues that because the 1991 Josephine County convictions "were based upon the same course of conduct or common scheme as the instant offense ... they should have been grouped with the present convictions for purposes of determining defendant's base offense level rather than added to defendant's criminal history." We disagree.

The 1991 Josephine County misdemeanor offenses involved the issuance of false financial statements to a finance company. Specifically, Allen was charged with using a false name, birth date, and social security number on three loan applications. The 1991 Josephine County felony offenses involved the theft of mobile home downpayment funds directly from customers of Allen's employer. In counts 16 and 27 of the 1994 federal indictment, Allen was charged with using a false name, birth date, and social security number on a personal line of credit application and a mobile home loan application. The remaining thirty-one federal offenses for which Al-

In its October 21, 1997 written statement of reasons, the court noted that it had adopted the June 12, 1997 RUPSR.

Neither party has argued before this court that the district court erred in applying the 1988 edition of the Sentencing Guidelines. Further-

more, Allen objected to the use of the 1993 Sentencing Guidelines and requested the court to use the 1988 version. Accordingly, any error resulting from the application of the 1988 Sentencing Guidelines to this case was invited by the defendant.

len was convicted involved the making of false statements in purchase agreements submitted to federally insured financial institutions. There is no similarity between the 1991 Josephine County felony offenses and any of the offenses charged in the 1994 federal indictment. While counts 16 and 27 of the federal indictment share similar modus operandi with the 1991 Josephine County misdemeanor offenses, we have previously held that "[a] common *modus operandi*, standing alone, is not sufficient to establish that two cases are factually related." *United States v. Davis*, 922 F.2d 1385 (9th Cir.1991).

In *United States v. Chapnick*, 963 F.2d 224 (9th Cir.1992), we summarized the factors identified in *Davis*, that are "relevant to the determination of whether prior offenses are part of a common scheme or plan." 963 F.2d at 226. *See also United States v. Houser*, 929 F.2d 1369, 1374 (9th Cir.1990). The factors are:

> (1) whether the crimes were committed "within a short period of time;" (2) whether the crimes involved the same victim; (3) whether the defendant was arrested by the same law enforcement agency for both crimes; and (4) when the arrests occurred and whether both crimes were solved during the course of one investigation.

*Chapnick*, 963 F.2d at 226 (citing *Davis*, 922 F.2d at 1390). Allen was arrested on different dates for the federal and state offenses. The federal offenses bearing a factual similarity to the state offenses involved different victims and were investigated by different law enforcement agencies. These facts suggest that the federal and state offenses are unrelated. *See Chapnick*, 963 F.2d at 226; *United States v. Houser*, 929 F.2d 1369, 1374 (9th Cir.1990); *Davis*, 922 F.2d at 1390. The fact that the offenses took place within the same relative time period is not dispositive. *See Chapnick*, 963 F.2d at 227. Because the 1991 state misdemeanor offenses are not related to the federal offenses, we conclude that the district court properly included the 1991 state convictions in its calculation of Allen's criminal history score.

As an alternative argument, Allen asserts that the 1991 Josephine County convictions "should have been considered related cases and treated as one offense under U.S.S.G. 4A1.2(a)(2) and the law of the case." Specifically, Allen argues that all of the 1991 state convictions "arose out of a single common scheme or plan." Because the district court treated the misdemeanor convictions as related to one another, and the felony convictions as related to one another, we focus our inquiry on the question whether the felony convictions (91–CR–0013; 91–CR–0191) are related to the misdemeanor convictions (90–CR–0219; 91–0691–M).

The two felony convictions were for theft and aggravated theft. These offenses bear no factual similarity to Allen's misdemeanor offenses—issuing false financial statements in personal line of credit and loan applications. *See Chapnick*, 963 F.2d at 226 (holding that the factual similarity of prior offenses is relevant to the "common scheme or plan" inquiry). Consequently, we conclude that the felony convictions in 91–CR–0013 and 91–CR–0191 are unrelated to the misdemeanor convictions in 90–CR–0219 and 91–0691–M. *See id. See also United States v. Buchanan*, 59 F.3d 914, 918 (9th Cir.1995).

We also reject Allen's contention that the district court's decision in the original findings-of-fact order that the offense in case number 90–CR–0219 "is the same matter contained in [91–CR–0191]" established the "law of the case" and precluded the district court from reexamining this matter at the resentencing hearing. In *United States v. Petty*, 80 F.3d 1384 (9th Cir.1996), we explicitly rejected a contention that the district court is without "authority to review a defendant's criminal history category" on remand, where the scope of the remand has not been "expressly limited ... to consideration of a single sentencing issue." *Id.* at 1388 (internal quotation marks omitted). As was the case in *Petty*, the remand here was not limited to any single sentencing issue. *See* Section VI, *infra*. Consequently, the district court was entitled to reconsider the entire sentencing package, including the factual findings regarding the relatedness of prior convictions used in calculating Allen's criminal history.

## IV

Allen argues that "under U.S.S.G. § 5G1.3, the district court should have credited defendant with the time served in state custody on the convictions arising out of the same course of conduct as the instant offense." The applicable version of U.S.S.G. § 5G1.3 states in pertinent part:

If at the time of sentencing, the defendant is already serving one or more unexpired sentences, then the sentences for the instant offense(s) shall run consecutively to such unexpired sentences, unless one or more of the instant offense(s) arose out of the same transactions ... as the unexpired sentences.

U.S.S.G. § 5G1.3 (1998). In light of our determination that none of the 1991 Josephine County convictions arose out of the same course of conduct as the instant offense, we conclude that Allen is not entitled to credit under § 5G1.3 for time served on the state convictions.

## V

■ Allen contends that the "district court exceeded its authority and violated defendant's double jeopardy rights by imposing defendant's sentence *nunc pro tunc.*" We disagree.

Allen's theory is that 18 U.S.C. § 3584(a) does not authorize the imposition of a sentence *nunc pro tunc.* Section 3584(a) states in pertinent part that "if a term of imprisonment is imposed on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively...." 18 U.S.C. § 3584(a). "Nunc pro tunc merely describes inherent power of court to make its records speak the truth.... Nunc pro tunc signifies now for then, or in other words, a thing is done now, which shall have same legal force and effect as if done at time when it ought to have been done." Black's Law Dictionary 964 (5th ed.1979). Section 3584(a) simply is not germane to the court's decision to impose a sentence *nunc pro tunc.* A court's indication to the Bureau of Prisons that a sentence is imposed *nunc pro tunc* is entirely distinct from the court's decision to impose the sentence consecutive to or concurrent with an undischarged term of imprisonment. The district court did not exceed its authority in imposing Allen's sentence *nunc pro tunc.*

■ The Bureau of Prisons informed the district court that Allen's release date for new sentences, calculated as if Allen was originally sentenced to 41 rather than 46 months, was February 15, 1997. At the time of the resentencing, Allen was already serving the consecutive 60–month sentence imposed for violation of the 1988 probation order. Consequently, the imposition of Allen's sentences *nunc pro tunc* does not disturb Allen's "reasonable and legitimate expectation that his [new] sentence was final." The *nunc pro tunc* sentences did not violate Allen's double jeopardy rights. *See Falcone,* 120 F.3d at 1084 ("The double jeopardy clause protects a criminal defendant's legitimate expectation that the proceedings against him are final.").

## VI

■ Allen contends that "[t]he district court erred when it imposed stricter conditions of release at the resentencing hearing" than the conditions imposed in the original sentence. Allen argues that the new, more onerous sentence violates the Double Jeopardy Clause of the Constitution.

Allen's argument is premised on the mistaken assumption that the district court's authority to resentence Allen following remand was limited to a correction of the illegal portion of the original sentence. However, in *United States v. Moreno–Hernandez,* 48 F.3d 1112 (9th Cir.1995), we held that "a resentencing mandate from an appellate court ... does away with the entire initial sentence, and authorizes the district court to impose any sentence which could lawfully have been imposed originally.... [D]ouble jeopardy is not implicated." *Id.* at 1116 (internal quotation marks and citations omitted). Allen does not contend that the special conditions imposed by the district court are themselves illegal. We conclude that the new sentence containing the special release conditions did not violate the Double Jeopardy Clause. Consequently, the district court was free to impose the additional conditions of supervised release. *See id. See also Petty,* 80 F.3d at 1388.

## VII

■ Allen maintains that the "district court erred in ordering restitution [to] Southern Oregon Federal Credit Union [ ('SOFCU') ] because the convictions relating to this company were vacated." We review for clear error the factual findings underlying a resti-

tution order. *See United States v. Sarno*, 73 F.3d 1470, 1503 (9th Cir.1995).

 While it is true that the written restitution order errantly lists SOFCU as a "payee," an unambiguous oral pronouncement is controlling over a subsequent written order. *See United States v. Garcia*, 37 F.3d 1359, 1368 (9th Cir.1994). At the resentencing hearing, the court stated: "The defendant shall make restitution in the amount of $1,450 to the victims identified in the presentence report." The district court adopted the findings and conclusions of the revised updated presentence report ("RUPSR"). The RUPSR does not specifically identify the persons entitled to restitution. However, the RUPSR does acknowledge this court's reversal of Allen's conviction on the two counts involving SOFCU. Thus, the only "victim" entitled to restitution pursuant to the RUPSR is Western Bank of Oregon. The court's oral pronouncement, viewed in light of the RUPSR, was not ambiguous. Contrary to Allen's assertion, the district court did not improperly order restitution to SOFCU.

## VIII

 Allen asserts that the district court "erred denying defendant's motion for a new trial" filed under Fed.R.Civ.P. 33 in which Allen maintained that "his trial attorney was ineffective in keeping a 1976 perjury conviction out of evidence at defendant's 1994 trial in this case."

 Allen's claim is not properly before the court. "We have rejected the use of a Rule 33 motion for new trial based on 'newly discovered evidence' involving the ineffective assistance of counsel." *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir.1997)(citing *United States v. Hanoum*, 33 F.3d 1128, 1130–31 (9th Cir.1994)). Although the district court denied Allen's Rule 33 motion on the ground Allen "himself offered these prior convictions on direct examination," we are free to affirm the district court's decision on any grounds supported by the record. *See United States v. Gonzalez–Rincon*, 36 F.3d 859, 866 (9th Cir.1994). Accordingly, we af-

firm the district court's denial of Allen's motion for a new trial.

## IX

 Allen contends that "[t]he district court overstated [his] criminal history by separately counting two 1987 related federal cases that were combined for sentencing." "Prior sentences imposed in related cases are to be treated as one sentence for purposes of criminal history." U.S.S.G. § 4A1.2(a)(2) (1998). "Cases are considered related if they . . . were consolidated for trial or sentencing." *Id.*, Application Note 3. This court is obliged to apply the Application Notes unless they are inconsistent with the text of the Guidelines. *See United States v. Taylor*, 984 F.2d 298, 299 (9th Cir.1993). Application Note 3 is not inconsistent with § 4A1.2(a)(2). *See United States v. Bachiero*, 969 F.2d 733, 734 (9th Cir.1992). We review *de novo* the question whether two prior sentences are related under § 4A1.2. *See United States v. Chapnick*, 963 F.2d 224, 226 (9th Cir.1992).

[25] In *Chapnick*, the court explained that there is no definitive rule "for determining whether cases have been consolidated for purposes of § 4A1.2." 963 F.2d at 228. This suggests that the inquiry is fact specific. The facts in *Chapnick* are nearly identical to the facts in the instant case. *See Chapnick*, 963 F.2d at 225–26. *Chapnick* involved two burglaries committed by the defendant within a two-week period. One burglary case was transferred for sentencing to the court handling the other burglary case. The court imposed identical concurrent sentences. There was no formal order consolidating the two cases, but the docket sheets indicated the transfer.[3] "Both cases retained separate docket sheet numbers." *Id.* On these facts, the court held that "Chapnick's prior criminal offenses were 'consolidated for sentencing' in the state court," and vacated Chapnick's sentence. *Id.* at 229.

Here, case number 87–60039 was transferred to the District of Oregon from the District of Arizona. The court ordered Allen to serve five years' probation in each case.

---

3. "There is no need for a formal consolidation order for cases to be 'related' under section 4A1.2." *United States v. Smith*, 991 F.2d 1468, 1473 (9th Cir.1993)(citing *Bachiero*, 969 F.2d at 734.).

Although 87–60027 and 87–60039 were never formally consolidated, the docket sheet in 87–60027 acknowledged the Rule 20 transfer of 87–60039. Both cases retained separate docket sheet numbers. An additional fact supporting the conclusion that these two cases were consolidated for purposes of U.S.S.G. § 4A1.2 is that Allen was sentenced pursuant to a single plea agreement.

Given the factual similarity between *Chapnick* and the instant case, we conclude that the two 1987 offenses should have been considered "related" for purposes of calculating Allen's criminal history score. However, we hold that the error in this case was harmless. The court's error increased Allen's criminal history score from 15 to 16. Correcting this error would have no impact on the guideline range calculation because Criminal History Category Six includes scores of thirteen and above. *See* U.S.S.G. § 5 Part A (1998). Nor is there any indication in the record that the district court would have imposed a lesser sentence absent the error. Consequently, we hold that the district court's error was harmless. *See United States v. Sanders*, 41 F.3d 480, 486–87 (9th Cir.1994)(holding that error was harmless and remand was unnecessary where error in calculation of criminal history did not alter sentencing range).

AFFIRMED.